UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Regina Link Lane | |
| | Civil Action |
| | Case No. 302CV579 (EEB) |
| v. | |
| | March 31, 2005 |
| Compass Group USA, Inc. | |

**DEFENDANT'S SUPPLEMENTAL RULE 56 MEMORANDUM
IN RESPONSE TO THE COURT'S FEBRUARY 22, 2005 ORDER**

**I.      Introduction**

Defendant Compass Group USA, Inc. ("Compass") submits this supplemental memorandum of law in response to the Court's February 22, 2005 Order. Compass answers the Court's three specific questions as follows:

(A)     Yes.  Under 29 U.S.C. §§ 1163(2), 1166(a)(2) and 1166(a)(4)(1), Compass provided timely COBRA notice to Lane two days after it terminated her employment. Lane received but chose to ignore this COBRA notice, yet suffered no damages as a consequence;

(B)     Section 1132(c)(1) of 29 U.S.C. is applicable to violations of 29 U.S.C. § 1166.  However, because Compass provided timely COBRA notice to Lane, and she suffered no damages, she is not entitled to recover under § 1132(c)(1); and

(C)     Because Compass provided timely COBRA notice to Lane, and she incurred no damages, she is not entitled to attorneys' fees under 29 U.S.C. § 1132(g).

**II.     Because Compass Timely Notified Lane of Her Rights Under COBRA, Lane is Not Entitled to Notice Damages.**

Compass terminated Lane's employment on August 3, 2000. (<u>See</u> "Separation Form" dated August 3, 2000, attached as Exhibit B to the Affidavit of Nicole Anker ("Anker Aff."), submitted with Compass' principal summary judgment papers). On August 5, 2000, just two days later, it sent her several documents concerning the continuation of her health insurance benefits under COBRA. It did so through a service provider with which it contracted to mail COBRA notices. (<u>See</u> Exhibit K to the Plaintiff's Affidavit ("Pl. Aff."); Plaintiff's Local Rule 56(a)(2) Statement ("Pl. R. 56(a)(2) Stmt."), ¶¶ 20-32). Specifically, on or about August 10, 2000, Lane received (and thereafter forwarded to her counsel) these documents:

- "Compass Group, USA Division COBRA Continuation of Coverage Election Form" (Exhibit K to Pl. Aff.; <u>see</u> Exhibit 1 to the Affidavit of David Casey ("Casey Aff."), attached hereto as Exhibit A) which explained that the "qualifying event" was the "termination of employment";

- "Compass Group USA, Inc. Notification of Option to Continue Coverage," which explained to Lane that "**TO CONTINUE COVERAGE YOU MUST COMPLETE THIS ELECTION**

**FORM AND RETURN IT WITHIN 60 DAYS OF THE DATE OF THIS NOTICE.  IF YOU MEET THIS DEADLINE, YOUR COVERAGE WILL AUTOMATICALLY BE REINSTATED BACK TO THE ORIGINAL TERMINATION DATE WITH NO BREAK IN COVERAGE**."  (See Exhibit 1 to the Casey Aff.") (emphasis in original);[1]

- A "COMPASS GROUP MANAGED CARE APPLICATION" with "COBRA" listed as the "Reason for Completing Form" and "Instructions for completing the Compass Group Managed Care Application."  (Exhibit 1 to Casey Aff.);

- "Compass Group, USA Division Certificate of Group Health Plan Coverage" bearing a date of August 5, 2000, providing the telephone number for the Compass Group USA Group Benefits Department, and directing Lane to contact the Group Benefits Department at that telephone number should she have questions or require further information. (Exhibit 1 to Casey Aff.).[2]

---

[1] While the text on the copy of the Compass Group USA, Inc. Notification of Option to Continue Coverage form which was produced in discovery by Lane is cut off on the right side, Compass' Benefits Coordinator, Robert Smith, states in his affidavit that the document as it is sent to departing Compass employees in the normal course of business contains the following instructions: "**RETURN IT WITHIN 60 DAYS OF THE DATE OF THIS NOTICE**."  (Affidavit of Robert Smith ("Smith Aff."), attached hereto as Exhibit B, ¶10) (emphasis in original).

[2] Lane produced these documents (attached as they were produced to Compass as Exhibit 1 to the Casey Aff.) in response to Compass' Request for Documents.  Lane faxed these documents to her counsel, Anthony Slez, Jr., Esq., under cover of letter dated August 16, 2000.  (See Ex. 1 to Casey Aff., p. 1).

Lane admits that she did not respond to these documents despite their clear instruction that she must do so to continue her health care coverage under Compass' plans. She tries to explain her inaction by claiming that "[she] had not received any prior written or verbal notice of such termination" and "believed that [she] did not have to take any action with regard to the notice." (Pl. Aff. ¶15; Lane's Opposition to Compass' Motion for Summary Judgment, pp. 2-3).[3] While this contention is not worthy of credence in light of her two-month plus unauthorized absence from work as of that time, Lane – and her counsel – certainly were put on notice that her continuing coverage was at risk. Because she neither asked Compass to explain the basis of the COBRA notice nor completed and returned the Compass Group's COBRA "Continuation of Coverage Election Form" (Exhibit K to Pl. Aff.), and did not respond to the "Notification of Option to Continue Coverage" (Exhibit 1 to Casey Aff.), and failed to return the Compass Group Managed Care Application (Exhibit 1 to Casey Aff.), Lane's coverage under Compass' health insurance plan ceased.

For its part, Compass took no action to end Lane's health care benefits until August 3, 2000. (Affidavit of Robert Smith ("Smith Aff."), attached hereto as Exhibit B, ¶8). Thus, as would be expected, Lane admits that she has paid for "no medical treatment out-of-pocket." (See Ex. O to Anker Aff., Response 10). Indeed, Lane further testified that, through her workers' compensation benefits and subsequent health insurance

---

[3] Because Lane sent documents which clearly state that "termination" was the qualifying event to her lawyer on August 16, 2000 (see Ex. 1 to Casey Aff., p. 1), Lane's contention in her March 8, 2005 memorandum of law that she was not aware that her employment had been terminated until Cigna informed her of this fact in November 2000 is simply not credible.

4

coverage, all of her medical bills (with the exception of a small sum paid for orthodontic work),[4] and not just those incurred from May through August 2000, have been paid. (Ex. A to Anker Aff., pp. 41-42).

Under 29 U.S.C. § 1166(a) and (c), Compass was required to provide COBRA notice to Lane within 44 days of her termination. Roberts v. National Health Corp., 963 F. Supp. 512, 515 (D.S.C. 1997), affirmed, 133 F.3d 916 (4th Cir. 1998); Cooper v. Harbour Inns of Baltimore, Inc., 2000 WL 351373 at *5 (D. Md. 2003) (Attached hereto as Appendix A-1); 29 C.F.R. § 2590.606-4(b)(2) (1995). Compass discharged this obligation by mailing such notice to Lane on August 5, 2000, just two days after it terminated her employment. Lane admits that she ignored the notice Compass sent her. (Pl. Aff. ¶15; Lane's Opposition to Compass' Motion for Summary Judgment, pp. 2-3). That her coverage under the Compass plan lapsed is not attributable to Compass; in any event, Lane lost nothing as a consequence.

**III.    Regardless of the Provision of Timely Notice under COBRA, Lane is Not Entitled to Damages.**

Acknowledging that she in fact received notice of her right to continue health care coverage under COBRA, Lane argues that it was late and thus somehow defective because Compass actually terminated her employment on May 22, 2000. While an inadvertent clerical error did characterize "May 22, 2000" as the "qualifying date" on plaintiff's COBRA notice form (Exhibit K to Pl. Aff.), the record as a whole

---

[4] Lane incurred expenses for some orthodontic work, but the date of service this treatment is not clear from her deposition testimony. It is entirely possible that plaintiff received this orthodontic work after her coverage would have expired.

5

demonstrates that Lane's employment in fact was terminated on August 3, 2000, and that the clerical error was inconsequential. Regarding the actual date of her termination, Compass' internal "Separation Form" is dated August 3, 2000, not May 22, 2000. (Exhibit B to Anker Aff.). Additionally, Compass informed Lane that her employment was terminated through various COBRA documents referenced above, which are dated August 5, 2000, and which Lane admits she received on August 10, 2000. (Ex. O to Anker Aff.; Ex. K to Pl. Aff.; Pl. Aff., ¶ 15; see Ex. 1 to Casey Aff.). Finally, Lane had worked and had <u>been</u> <u>paid</u> after May 22, 2000. Thus, the evidence shows that Lane's employment was terminated on August 3, 2000.[5]

Even if the Court accepts Lane's argument that the qualifying event took place on May 22, 2000 (see footnote 5, infra), Compass is nonetheless entitled to summary judgment because Lane has not presented any evidence that she was damaged by the alleged late notice. Where plaintiffs have not established damages, courts regularly grant summary judgment to employers despite their failure to comply with the technical notice requirements of 29 U.S.C. § 1166(a). In Kost v. United Parcel Service, 1996 WL

---

[5] Moreover, there is ample circumstantial evidence that Lane's employment was not terminated before August 3, 2000. Lane stated in her affidavit that she spoke to her supervisor at Compass, Debbie Rubenstein, on June 1, 2000, and that Rubenstein confirmed that she had received a doctor's note excusing Lane from work on or around May 31, 2000. (Pl. Aff., ¶11). Lane further stated that on or around June 7, 2000, she once again saw Rubenstein who said nothing about Lane's termination. (Pl. R. 56(a)(2) Stmt., ¶15). Strikingly, in her opposition to Compass' motion for summary judgment, Lane also noted that Rubenstein testified on June 15, 2000 that were Lane to call and state that she was ready to return to work, Rubenstein would have allowed her to do so at that time without providing medical authorization for same. (See Exhibit I to Pl. Aff., p. 27). Finally, in a log generated by Compass concerning Lane's COBRA notice and date of termination (attached as Exhibit G to Plaintiff's Memorandum of Law filed on March 8, 2005), Compass employees describe the May 22, 2000 termination date as an error that needed to be "corrected." (Exhibit G to Plaintiff's Memorandum of Law filed on March 8, 2005). It is plain, then, that May 22, 2000 was <u>not</u> the date on which Compass terminated plaintiff's employment and is not the "qualifying event" for COBRA purposes.

459815, at *2-*3 (D. Kan. 1996) (Attached hereto as Appendix A-2), UPS had not timely recorded plaintiff's separation date into its computer system and failed to provide the plaintiff with COBRA notice until fifteen months after her employment terminated. Nonetheless, the court found that because "there appear[ed] to be no damages whatsoever" and because "plaintiff [did] not claim to have been prejudiced or injured" due to UPS' error, summary judgment for UPS was required.  Id. at *3; see Partridge v. HIP of Greater New York, 2000 WL 827299, at *6-7 (S.D.N.Y. 2000) (Attached hereto as Appendix A-3) (granting employer's motion for summary judgment on plaintiff's COBRA claim where plaintiff suffered no prejudice due to the employer's late COBRA notice because her health care costs were covered by her health insurance with her subsequent employer); Wilcock v. National Distributors, Inc., 2001 WL 877547, at *9 (D. Me. 2001) (Attached hereto as Appendix A-4) (granting summary judgment on COBRA claims because the plaintiff's coverage continued beyond the date of the triggering event and because, even if it did not, "the plaintiff ha[d] not shown that he was damaged in any way by" his employer's "failure to provide the required notice" in a timely fashion); Kerkhof v. MCI Worldcom, Inc., 2000 WL 1196334, *9-12 (D. Me. 2000) (Attached hereto as Appendix A-5) (where the employer was inexplicably late in providing COBRA notice, but where the notice, when provided, allowed the plaintiff 60 days to elect coverage, court granted the employer's motion for summary judgment on plaintiff's COBRA claim); Boucher v. Williams, 13 F. Supp.2d 84, 104-05 (D. Me. 1998) (where the facts were disputed regarding whether the employer ever provided COBRA

notice to the plaintiff, the court nonetheless granted the employer's motion for summary judgment because plaintiff "failed to show he suffered any harm or prejudice due to his lack of notice"); see also Sherman v. AI/Focus, Inc., 113 F. Supp.2d 65 (D. Mass. 2000) (court refused to award damages to the plaintiff who had received a late COBRA notice in part because she did not "show that the late notice actually caused her any damages"); Rinaldo v. Grand Union, Co., 1995 WL 116418, at *2 (E.D.N.Y. 1995) (Attached hereto as Appendix A-6) (noting that it would be "disinclined" to order damages where the plaintiff suffered no damages).

Here, Lane has not shown that the allegedly late COBRA notice caused her any damages. Thus, whether Compass terminated Lane's employment on May 22, 2000 or merely created a document which mistakenly suggested the same, Lane continued to receive health insurance benefits through the date of her COBRA notice and otherwise sustained no damages.

In the period from May 2000 through August 2000, Lane submitted various claims against her health insurance which Compass paid. (Smith Aff., ¶ 11). Lane also made claims for services rendered in September and October 2000. (Smith Aff., ¶ 12). Compass paid these claims even though they were made after Lane's employment had been terminated and after she failed to continue her coverage under Compass' insurance plan. (See Smith Aff., ¶ 12; Pl. Aff., ¶15; Lane's Opposition to Compass' Motion for Summary Judgment, pp. 2-3).

Additionally, much like the employers in Kost and Kerkhof, once Compass did provide Lane with COBRA notice, it offered her the opportunity to reinstate her coverage "BACK TO THE ORIGINAL TERMINATION DATE WITHOUT ANY BREAK IN COVERAGE." Thus, even if Compass had canceled Lane's coverage before August 3, 2000, which it had not, it agreed to and would have reinstated same. (See Exhibit 1 to Casey Aff.). Lane, however, chose not to respond to Compass' notice. (Pl. Aff., ¶ 15).

Most important, Lane admits that she has paid no out-of-pocket costs for any treatment at any time. (Ex. A to Anker Aff., pp. 41-42). Lane referenced no evidence in her March 8, 2005 Memorandum and entered no evidence into the summary judgment record that she suffered any damages as a result of Compass' allegedly late COBRA notice. Because Lane sustained no damages as a result of Compass' allegedly late COBRA notice, Compass is entitled to summary judgment on this claim. Kost, 1996 WL 459815, at *2-*3; (Attached hereto as Appendix A-2) Partridge, 2000 WL 827299, at *6-7 (Appendix A-3); Boucher, 13 F. Supp.2d at 104-05.

**IV.     Should the Court Award Lane Damages on Her COBRA Claim, They Should Be Limited, and She Is Not Entitled to Attorneys' Fees.**

    A.     Statutory Penalties Are Inappropriate in this Case.

Even were the Court to determine that Lane is entitled to recover under 29 U.S.C. §§ 1166 and 1132(c), it should award nothing more than nominal damages in light of the facts in the record.

In determining whether to assess damages against an employer under § 1132(c) for failure to timely provide notice under COBRA, courts have discretion to award damages of up to $110 per day per violation and to award no damages at all. Courts consider factors such as bad faith and lack of control on the employer/administrator's part, and whether or not the former employee has been prejudiced or harmed as a result of the failure to provide timely notice. Sherman v. AI/Focus, Inc., 113 F. Supp.2d 65 (D. Mass. 2000) (awarding no damages where plaintiff failed to establish prejudice resulting from the employer's untimely provision of COBRA notice); Powell v. Wilmington Plumbing Supply Co., Inc., 921 F. Supp. 1264 (D. Del. 1996) (awarding plaintiff $20 per day in damages because plaintiff had not been prejudiced by an employer's provision of COBRA notice 101 days late). That an employer is late in providing COBRA notice and that its delay is "inexplicable" are insufficient to support a finding of bad faith. Kerkhof, 2000 WL 1196334 at *12-13 (attached hereto as Appendix A-5) (where employer was inexplicably late in providing COBRA notice but where the notice, when provided, allowed the plaintiff 60 days to elect coverage, court rejected plaintiff's argument that employer acted in bad faith and awarded no damages). Further, "failing to promptly input [a plaintiff's] separation information into the computer" . . . "does not rise to the level of bad faith; it merely demonstrated bureaucratic bungling of papers." Kost, 1996 WL 459815 at *3 (Attached hereto as Appendix A-2) (awarding no damages).

In this case, the record quite simply reveals that Compass terminated Lane's employment on August 3, 2000 and provided her with timely COBRA notice on or about

10

August 10, 2000. That it created a document noting that her employment was terminated on May 22, 2000, which it sent to her with documentation that clearly revealed that her termination was on August 3, 2000, was at most a "bureaucratic bungling" that does "not rise to the level of bad faith." Id. In this light and where she suffered no damages, the Court need not award Lane any statutory penalty. Alternatively, it should impose a nominal penalty only.[6] To do more, especially where Compass offered (and Lane ignored) the opportunity to elect coverage in August 2000, would permit her to "exploit inadvertent error by [Compass] into a windfall award of discretionary penalties and costs." Kost, 1996 WL 459815, at *3 (Attached hereto as Appendix A-2). The Court should "not be a party to such an unscrupulous cause." Id.

  B.  Attorneys' Fees Are Inappropriate in this Case.

Pursuant to the five-factored test enunciated in Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869 (2d Cir. 1987), Lane is not entitled to an award of attorneys' fees. Section 1132(g)(1) provides that, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a

---

[6] Lane seems to believe that she is entitled to statutory penalties from the date on which Compass allegedly was required to provide COBRA notice through the entire 18 month period in which plaintiff would have received benefits had she elected to continue to receive health insurance through Compass' group plan under COBRA. (See Exhibit O to Anker Aff., ¶ 11C). This is patently incorrect. When assessing statutory penalties for failure to timely notify an employee of their rights to continue coverage under COBRA, the period in which penalties are to be assessed begins on the date when the plan should have sent the COBRA notice and ends on the date when the plaintiff actually received the COBRA notice. See Burris v. Five River Carpenter Dist. Counsel Health & Welfare Fund, 2004 WL 298425 (S.D. Iowa 2004) (Attached hereto as Appendix A-7); Chenoweth v. Wal-Mart Stores, Inc., 159 F. Supp.2d 1032 (S.D. Ohio 2001). Here, the period for which the Court may assess damages begins on July 5, 2000, which is 44 days after Compass allegedly terminated her employment on May 22, 2000, and ends on August 10, 2000, when Lane received the COBRA notice from Compass.

reasonable attorney's fee and costs of action to either party." In Chambless, the Second Circuit held that the decision is based on "five factors: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants." Id. at 871. Under these factors, the Court should not award attorney's fees to Lane. As explained above, to the extent Compass was tardy in providing Lane with COBRA notice under § 1166 (and Compass maintains that it was not), it is because Compass made an inadvertent clerical error on Lane's COBRA notice after her employment was terminated on August 3, 2000. Not only does such an error "not rise to the level of bad faith," Kost, 1996 WL 459815 at *3 (Attached hereto as Appendix A-2) (assessing no damages), it caused her no harm. With respect to prong (3) of the Chambless test, because Compass' inadvertent error was just that, an isolated error, an award of fees will not deter other persons from acting similarly. See Rodriguez v. International College of Business and Technology, Inc., 2005 WL 555314, -- F. Supp.2d -- (D.P.R. 2005) (Attached hereto as Appendix A-8) (finding that attorneys' fees were appropriate where employer was in "gross violation of COBRA in that it routinely does not provide COBRA notifications to employees and/or does not retain COBRA records"); Holford v. Exhibit Design Consultants, 218 F. Supp.2d 901, 909-10 (W.D. Mich. 2002) (finding award of attorney's fees appropriate where employer provided no COBRA notice and "made it official

company policy that no COBRA notification would occur"). Similarly, as to prong (5) of the test, it is undisputed that Lane's action confers no benefit on a group of pension plan participants. Rather, her action concerns a single, isolated error in which Compass input the wrong termination date on a single employee's COBRA notice form. See id.

Perhaps most important, the relative merits of this matter dictate that the Court not assess attorney's fees against Compass. Lane has suffered no prejudice and no harm as a result of Compass' inadvertent error. Compass paid for claims Lane made against her health care coverage for services rendered throughout the summer of 2000, after the alleged date her employment was terminated, May 22, 2000. (Smith Aff., ¶ 11). Compass even paid for claims Lane made on her insurance in September and October 2000, well after she was entitled to insurance coverage. (Smith Aff., ¶ 12). Lane has admitted that she has paid no out-of-pocket costs for any services rendered to her, (see Ex. O to Anker Aff., Response 10), and that all of her medical bills have been paid. (Ex. A to Anker Aff., pp. 41-42).[7] This is not a case in which the merits dictate that an employer needs to be punished for a purposeful violation of COBRA. Based on the

---

[7] As support for her request for attorney's fees, Lane states in her March 8, 2005 memorandum of law that she "in fact did not learn of the [May 22, 2000] termination date until she received a termination of coverage notice from CIGNA dated November 14, 2000." (See Lane's March 8, 2005 Memorandum of Law, p. 8). In the first instance, it is unclear how this supports her claim for attorney's fees. Additionally, this contention flies in the face of her admission that, on or about August 10, 2000, she received (and ignored) the COBRA notice bearing May 22, 2000 as her termination date. (Pl. Aff., ¶15; Lane's Opposition to Compass' Motion for Summary Judgment, pp. 2-3; see also Exhibit 1 to Casey Aff.). Lane's inconsistency on this point further undercuts her request for attorney's fees. In truth, had Lane simply responded to the COBRA notice when she received it in August 2000, she could have avoided a break in coverage altogether.

13

evidence in the record, Compass respectfully submits that an award of attorney's fees is inappropriate in this case.[8]

**V.     Conclusion**

For the foregoing reasons and those set forth in Compass' Rule 56 Memorandum and Reply Memorandum, the Court should grant Compass' Motion for Summary Judgment on all claims asserted.

Respectfully submitted,

COMPASS GROUP USA, INC.

By_____
Jesse A. Langer (CT 25440)
Susman, Duffy & Segaloff, P.C.
55 Whitney Avenue, P.O. Box 1684
New Haven, CT 06507
(203) 624-9830
(203) 562-8430 (fax)
jlanger@susmanduffy.com

David C. Casey
Littler Mendelson, P.C.
One International Place, Suite 2700
Boston, MA 02110
(617) 378-6000
(617) 737-0052 (fax)
dcasey@littler.com

---

[8] Plaintiff's contention in her May 8, 2000 Memorandum of Law that Compass has suddenly changed its position as to the date that Lane's employment was terminated and that this fact somehow supports her request for an award of attorney's fees is patently incorrect. In its principal Rule 56 Memorandum and in its Reply to Lane's Opposition to Compass's Motion for Summary Judgment, Compass argued quite clearly that it terminated Lane's employment on or around August 3, 2000. (See Compass' Principal Rule 56 Memorandum, p.1; Reply Memorandum, p. 2).

14

## CERTIFICATION

  I hereby certify that a copy of the foregoing was sent via first class mail postage prepaid on the 31st day of March 2005 to the following counsel of record:

Andrew Fink, Esq.  
Margaret Slez, Esq.  
Mark Carron, Esq.  
Carron & Fink  
1698 Post Road East  
Westport, CT 06880

                _____  
                Jesse A. Langer