```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

|  |  |
|---|---|
| REGINA LINK LANE, | : |
| Plaintiff, | : CIVIL NO. |
| v. | : |
|  | : 3:02 CV 579 (EBB) |
| COMPASS GROUP USA, INC., | : |
| Defendant | : |

## MEMORANDUM AND DECISION

Plaintiff Regina Link Lane ("Plaintiff" or "Lane") commenced this litigation against her former employer, Compass Group USA, Inc. ("Defendant" or "Compass") in the Superior Court for the State of Connecticut, Judicial District of Litchfield. Compass timely removed the case to this Court, based on federal question jurisdiction.

The sole issue remaining before this Court is Count 4 of Plaintiff's complaint, which alleges that Defendant violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), a subchapter of the Employee Retirement Income Security Act ("ERISA"), Section 1161, et. seq, by failing to give Plaintiff timely notice of certain health coverage rights after her termination.[1]

---

[1] Counts Two and Three, which set forth state law claims, were withdrawn by Plaintiff. On October 21, 2005, the Court granted Defendant's motion for summary judgment with respect to Count One. Doc. No. 59.

This Court held a bench trial on this claim on July 19th and July 20th of 2007. At the close of Plaintiff's case, Defendant orally moved under Rule 52(c) for a judgment on partial findings in its favor. For the following reasons, Defendant's motion is GRANTED.

## INTRODUCTION

Rule 52(c) states:

> "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding, or the court may decline to render any judgment until the close of all the evidence." Fed. R. Civ. P. 52(c).

A Rule 52(c) motion made by a defendant may be granted "where the plaintiff has failed to make out a prima facie case or where the plaintiff has made out a prima facie case but the court determines that a preponderance of the evidence goes against the plaintiff's claim." Stokes v. Perry, No. 94 Civ. 0573, 1997 WL 782131, at *9 (S.D.N.Y. Dec. 19, 1997), citing Wright v. Miller, 9A FPP § 2573.1. Unlike Rule 50, which governs judgment as a matter of law in jury trials, the court under Rule 52(c) does not consider the evidence in the light most favorable to the nonmoving party. Instead, the court's task is to "weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." Wright & Miller, 9A FPP § 2573.1. In addition, Rule 52(c)

requires the district court to "find the facts specially and state separately its conclusions of law thereon." Fed.R.Civ.P. 52(a).

In her pre-trial memorandum, Plaintiff alleges that the notice she received regarding her rights under COBRA, which erroneously stated that she was terminated on May 22, 2000, was a "nullity" because it referred to "a non-existent termination." Doc. No. 88. Plaintiff claims that she was employed by Compass (but out on workers' compensation) until she signed a workers' compensation stipulation on August 8, 2003, and that "the only notice she received that her health insurance was cancelled was when her doctors began refusing to see her in November 2000". Id. Plaintiff seeks statutory damages of $100 per day for what she claims is a COBRA eligibility period of 29 months.[2]

In response, Defendant argues that notwithstanding the date of termination error on the COBRA documents, Plaintiff was terminated on August 3, 2000, timely received her COBRA notice shortly thereafter, but chose to ignore it. Doc. No. 86.  Thus, Defendant maintains that it complied with its statutory obligation to provide Plaintiff with timely COBRA notice, and any alleged damages Plaintiff claims flowed solely from her decision to ignore it.

At trial, Plaintiff's counsel offered Plaintiff as its only witness.  During her direct examination, Plaintiff admitted to the

---

[2] 29 U.S.C. § 1132(c)(1) provides for monetary penalties, up to $110 per day, for violation of the COBRA notice provisions of 29 U.S.C. 1161(1) or (4).

Court that she was under medication impairing her ability to answer questions truthfully. Vol 2 at 11, 12. Defendant moved to strike Plaintiff's testimony, which the Court granted. Vol 2 at 18, 32. Defendant also agreed to allow Plaintiff's counsel to call Debbie Rubenstein, Plaintiff's supervisor at Compass, in its case in chief even though she had not been disclosed as a witness for trial in the pretrial memorandum. Vol 2 at 32.

## **FINDINGS OF FACT**[3]

As required by Rule 52(c), the Court has considered the admissible evidence offered by the parties and finds the following facts. To the extent that any finding of fact reflects a legal conclusion, it shall be deemed a conclusion of law, and vice versa. See Miller v. Fenton, 474 U.S. 104, 113-14, 106 S.Ct. 445, 451-52 (1985) (noting the difficulty, at times, of distinguishing findings of fact from conclusions of law).

First, the Court's findings of fact include the following stipulations the parties agreed to at trial:

Compass hired Plaintiff on September 22, 1999. Vol 2 at 34.

Plaintiff elected to participate in the health and dental insurance program provided by Compass. Vol 2 at 35.

Compass contracted with Zurich-American Insurance Company to administer the state-required workers' compensation benefits. Vol

---

[3] The Court bases its findings of fact on the admissible testimony at the two-day bench trial, along with the exhibits admitted into evidence during the trial. In cases where both parties submitted the same document into evidence, the Court will only cite to the Defendant's copy.

2 at 35.

On March 8, 2000, Plaintiff was injured on the job. Vol 2 at 35.

As a result of this injury, Plaintiff filed for workers' compensation benefits in early June 2000. Vol 2 at 35.

Plaintiff provided her employer with a series of notes excusing her from work beginning in early March until the Plaintiff returned to work on May 11, 2000. Vol 2 at 35.

The last day Plaintiff worked was on or about May 22, 2000. Vol 2 at 35.

Compass retained Creative Marketing Solutions (CMS) for the mailing of their COBRA notices. Vol 2 at 36.

On or about August 5, 2000, CMS, on behalf of Compass, sent a purported COBRA notice to the plaintiff.[4] Vol 2 at 36

Plaintiff never completed the purported COBRA notice election form and never returned it to Compass. Vol 2 at 40-41.

In addition, the Court finds the following facts from the admissible evidence offered by the parties[5]:

Plaintiff was injured on March 8, 2000 when, while on the job,

---

[4] The Court notes that Plaintiff only admitted receiving the documents (after repeatedly stating that she never received COBRA notice), once discovery had been completed. Indeed, as it turned out, within days after receiving the COBRA notice, Plaintiff faxed the documents to her attorney. Def. Ex. C.

[5] Once Plaintiff's testimony was stricken, the only admissible evidence for the Court to consider were the exhibits admitted and the testimony of Deborah Rubenstein, Plaintiff's former supervisor, whose testimony the Court finds to be credible.

5

she smashed her fingers against a door jam. For the next two months, Plaintiff worked intermittently. See Vol 2 at 90-94; Def. Ex. C. Plaintiff returned to work on May 12th, and worked through May 22nd. Vol 2 at 93; Def. Ex. C. On May 23rd, Plaintiff left a message on her supervisor Deborah Rubenstein's voicemail, stating that she had a doctor's note and would be out of work until May 30th. Vol 2 at 93. Plaintiff did not show up to work on May 30st. Nor did she call Ms. Rubenstein to explain her absence. Vol 2 at 94; Def Ex. C. Instead, Plaintiff left a message on Ms. Rubinstein's voicemail on May 31st stating that she would be in after a doctor's appointment at 8:15 am. Vol 2 at 94. However, on that day, and for the next four work days, Plaintiff did not show up to work. Nor did she call to explain her absence. Vol 2 at 94; Def. Ex. C. In fact, Plaintiff never returned to work, and Ms. Rubenstein stopped keeping track of Plaintiff's attendance, or lack thereof, sometime in July. Vol 2 at 96.

    It is clear to the Court that Plaintiff was terminated on August 3, 2000, see Def. Ex. A ("Separation Form", dated August 3,2000 and stating that Plaintiff was being terminated for "job abandonment"), and that the May 22, 2000 date in the COBRA notice was a clerical error. First, if Plaintiff had been terminated on May 22nd, there would have been no reason for Ms. Rubenstein to continue noting her absences on the attendance log. See Def. Ex. C. Second, on June 7th, Plaintiff came into work to pick up two

paychecks, physically entering the building. Vol 2 at 94. Plaintiff would not have been able to enter the building had she already been terminated. Vol 2 at 95 (Ms. Rubenstein testifying that had Plaintiff been terminated at this point, she would only have been admitted into the lobby, and would have been escorted into the main building). Finally, Ms. Rubenstein's testimony at Plaintiff's child custody hearing on June 15, 2000 also indicates that Plaintiff was still employed with Compass despite her absences:

"Q:  If Mrs. Lane were to contact you tommorrow and let you know that she wanted to come back to work on Monday, would she be able to?

A"   Yes."

Def. Ex. K at 27. Ms. Rubenstein stated that she would not have testified this way had Plaintiff been terminated in May. Vol 2 at 103.

Within days of her termination on August 3, 2000, Compass sent Plaintiff a five-page COBRA notice, which Plaintiff forwarded to her attorney on August 16, 2000. Def. Ex. B. Specifically, the COBRA notice contained the following documents:

1) A "Compass Group, USA Division COBRA Continuation of Coverage Election Form" which stated that the "qualifying event" was the "termination of employment";

2) A "Compass Group USA, Inc. Notification fo Option to Continue

Coverage," which explained to Plaintiff that:

> "**TO CONTINUE COVERAGE YOU MUST COMPLETE THIS ELECTION FORM AND RETURN IT WITHIN 60 DAYS OF THE DATE OF THIS NOTICE. IF YOU MEET THIS DEADLINE, YOUR COVERAGE WILL AUTOMATICALLY BE REINSTATED BACK TO THE ORIGINAL TERMINATION DATE WITH NO BREAK IN COVERAGE**" (emphasis in original);

3) A "Compass Group Managed Care Application," listing "COBRA" as the "Reason for Completing Form" and including instructions on how to complete the form; and

4) A "Compass Group, USA Division Certificate of Group Health Plan Coverage" dated August 5, 2000, providing the address and telephone number of Compass Group's Benefits Department and directing Plaintiff to call should she require further information. Def. Ex. C.

## CONCLUSIONS OF LAW

The sole issue before the Court is whether Defendant violated the notice provisions of COBRA.  The Court holds that it did not.  Rather, the Court finds that Defendant satisfied its statutory obligation to give Plaintiff timely notice of her right to continue her health insurance coverage.

COBRA was enacted in 1985 as a legislative response to the growing number of Americans without health insurance and the reluctance of hospitals to treat the uninsured.  <u>Phillips v. Saratoga Harness Racing, Inc.</u>, 240 F.3d 174, 279 (2d Cir. 2001), <u>citing</u> H.R. Rep. No. 241, 99th Cong., 2d Sess. 44, reprinted in 1986

U.S.C.C.A.N. 42, 579, 662.  COBRA amended ERISA to provide employees who had been covered by an employment-related group health care plan with the opportunity to elect group rate continuation of coverage under the plan in the face of an enumerated "qualifying event", such as a job loss or hour reduction. 29 U.S.C. § 1161; <u>Local 217, Hotel and Restaurant Employees Union v. MHM, Inc.</u>, 976 F.2d 805, 809 (2d Cir. 1992) (discussing COBRA purpose and requirements). "Under COBRA, health care sponsors are required to provide such coverage and to notify their covered employees of their election rights under the Act." <u>Hubicki v. Amtrak Nat'l Passenger Railroad Co.</u>, 808 F. Supp. 192, 196 (E.D.N.Y. 1992), <u>citing</u> 29 U.S.C. §§ 1161, 1166.

The notification requirements of COBRA are clear.  In the event of termination of a covered employee (known as a "qualified benficiary"), an employer must notify the administrator of the group health plan within thirty days of the termination. 29 U.S.C. § 1166(a)(2). The plan administrator, in turn, must notify the covered employee within fourteen days of his right to continuation of coverage. 29 U.S.C. § 1166(c).  The qualified beneficiary then has sixty days from the qualifying event or from the date on which she receives notice of the event to make her election. 29 U.S.C. § 1165(1).  Thus, compliance with the notification requirements of COBRA requires both that the notice is timely and that it informs the qualified beneficiary of her election rights under the statute.

Here, Plaintiff argues that the COBRA notice she received was a "nullity" because it referred to a "non-existent termination" and that she was employed by Compass up until the signing of her workers' compensation stipulation in August 2003. However, as noted above, it is clear that Plaintiff was terminated on August 3, 2000, and that the May 22nd termination date in the COBRA notice was a clerical error. Moreover, it is undisputed that the COBRA notice was sent to Plaintiff on or about August 10, 2000. Thus, the COBRA notice was timely, because it was sent well within forty-four days after the qualifying event at issue.

In addition, the documents in the COBRA notice provided Plaintiff with ample information of her election rights under the statute, including why she was eligible for COBRA, how long she could be covered under COBRA, the monthly cost of continuation coverage, instructions on how to complete the application, the deadline for returning the form and an address and telephone number to call if she had any questions. Def. Ex. C.

Nonetheless, Plaintiff argued at the bench trial that the COBRA notice was invalid because of the erroneous termination date. Vol 2 at 138. However, Plaintiff offers no authority to support a claim that a typographical error would make a COBRA notice ineffective as a matter of law. Moreover, nothing in the statute states that, in order to be effective, a COBRA notice must indicate the date of the qualifying event.

Indeed, the statute is silent as to how COBRA eligibility must be communicated to a qualified beneficiary. Nonetheless, "courts that have considered [the issue] have determined that a good faith attempt to comply with a reasonable interpretation of the provision is sufficient." Truesdale v. Pacific Holding Co./Hay Adams Div., 778 F. Supp. 77, 81-82 (D.D.C. 1991) (collecting cases); see also Conery v. Bath Associates, 803 F.Supp. 1388, 1398 (N.D. Ind. 1992) (collecting cases).

For example, in Hubicki v. Amtrak Nat'l Passenger R.R. Co., 808 F. Supp. 192 (E.D.N.Y. 1992), the employee acknowledged that she received COBRA information from her employer, but argued that the notice was deficient because she received it without any explanation. 808 F. Supp. at 197. Applying a "good faith" standard, the Court held that the COBRA document's statement that coverage was continued for employees who cease their employment "for any reason other than gross misconduct" was sufficient explanation. Id. In Conery v. Bath Associates, 803 F.Supp. 1388 (N.D.Ind.1992), the plaintiff employee's children argued that, even if their father had received his COBRA notice, they were entitled to summary judgment on their COBRA claims because they had not received individual COBRA notices. The court held that, under the "good faith" standard, the notice sent to the father was "reasonably calculated," following "common sense," to inform his children of their COBRA rights. 808 F. Supp. at 1399. In Lincoln

General Hospital v. Blue Cross/Blue Shield of Nebraska, 932 F.2d 1136 (8th Cir. 1992), a covered employee received a divorce from his wife, which served as a qualifying event for the wife. The employer gave the employee a COBRA notice to deliver to his ex-wife, who was in a coma, and the insurance company mailed the benefits information to the ex-wife in a timely fashion. Even though the ex-wife, in a coma, obviously never received formal COBRA notice, the court held that the insurance company had met its notice obligations because the information that it had sent "adequately informed her of the coverage she was entitled to receive and the money that she owed in order to maintain this coverage." 963 F.2d at 1140.

    Here, Compass Group's clerical error did not negate its good faith attempt to satisfy its obligation of notifying Plaintiff of her right to continuing health coverage. Nor did it frustrate Plaintiff's understanding of her rights under COBRA. As previously noted, the COBRA notice sent to Plaintiff clearly explained her rights under statute, provided contact information should Plaintiff have further questions and stated in bold letters that in order to continue coverage, she had to return the form within 60 days. Under the "good faith" standard courts have adopted for determining whether an employer complied with COBRA notice provisions, the notice that Compass sent was reasonably calculated to inform Plaintiff of her right to elect COBRA benefits, notwithstanding the

erroneous termination date. It is undisputed that Plaintiff timely received this notice but chose not to elect coverage. In addition, there is no evidence that Plaintiff timely contacted Compass Group's benefits department, as the COBRA notice invited her to do, with any questions (including any questions as to the erroneous termination date).[6] Instead, she simply ignored the notice (although she presumably thought the notice was important enough to send to her attorney).

## CONCLUSION

For the foregoing reasons, the Court concludes that Defendant did not violate the notice requirements of COBRA as set forth in 29 U.S.C. § 1166 and is thus not liable to Plaintiff under 29 U.S.C. § 1132(c). Accordingly, the Clerk is directed to enter judgment for Defendant on Plaintiff's claim and to close the file.

SO ORDERED

/s/
ELLEN BREE BURNS
SENIOR U.S. DISTRICT JUDGE

---

[6] Instead of contacting the Benefits Department, Plaintiff, two months after receiving the COBRA notice, sent a letter to Ms. Rubenstein asking her to send "the packet of Health Insurance Information so I may renew my coverage." Def. Ex. E (dated October 19, 2000). On November 28, 2000, Plaintiff sent a letter to the Human Resources Department at Compass, asking it to "immediately restore my medical health coverage" and stating that "it will be at your legal peril to deny me medical health coverage as this is clearly provided by statutory law." Pl. Ex. 55.

Dated at New Haven, Connecticut this          day of October 2007.

14